FRANCES RINALDI, as Administratrix of the Estate of ALBERT RINALDI, Deceased, Respondent, v STATE OF NEW YORK, Appellant. (Claim No. 57951.)

Third Department, November 13, 1975

*Louis J. Lefkowitz, Attorney-General (Jeremiah Jochnowitz and Ruth Kessler Toch of counsel), for appellant.*

*Burchetta, Goldsand & Burchetta, P. C. (Joseph L. Burchetta of counsel), for respondent.*

MAIN, J. At about 7:20 P.M. on November 8, 1972, Albert Rinaldi, deceased, was operating his automobile in a generally southerly direction on New York State Highway Route No. 22, as he was homeward bound from his employment at the Castle Precision Instruments Company. At a point on the highway about two tenths of a mile northerly of the north boundary of Putnam County and where the highway is bounded on the west by property of one Nikola, a large leader limb from a 160-year-old maple tree fell, and crashed down on Rinaldi's vehicle, causing his death. The maple tree was located within the highway right-of-way and but a very few feet from the easterly edge of the paved portion of the highway. The leader limb had, prior to falling, extended outward and over both the north and southbound lanes of the highway. Inspection subsequent to the accident revealed an area of advanced disease and decay near the anchor point of the leader limb, as well as a larger but similarly decayed area on the trunk of the tree. At the time of the accident it was windy

and raining. The question of the possible contributory negligence of the driver has not been raised, for the obvious reason that there is not an iota of evidence in the record that would support such a theory. After trial, the court awarded damages to the estate in the sum of $375,000, and from the judgment thereon the State now appeals.

The State contends that it had no notice of any defective, diseased or dangerous condition of the tree; that its inspection procedures were reasonable and satisfied the requirements of the law; that the accident was due to an act of God, and that the award was excessive.

It is well settled that the State has a duty to maintain its highways in a reasonably safe condition for travel (Highway Law, § 12; *Doulin v State of New York,* 251 App Div 767, affd 277 NY 558) and this duty extends not only to the road surface and shoulders, but also applies to conditions *adjacent to* and *above* the highway, which could reasonably be expected to result in injury and damage to the users thereof *(Edgett v State of New York,* 7 AD2d 570; *Doulin v State of New York, supra).* That this duty extends to trees which overhang a highway was clearly enunciated by then Mr. Justice HERLIHY in *Edgett (supra,* p 574) where he wrote: "A tree owned by the State with branches overhanging the highway constitutes potential danger to the traveling public and the duty to properly inspect and correct by trimming or removal is essential to proper maintenance."

It is, of course, equally certain that while the State has this duty, no liability attaches unless the State has had actual or constructive notice of the dangerous or potentially dangerous condition *(Berkshire Mut. Fire Ins. Co. v State of New York,* 9 AD2d 555) and then fails to take reasonable measures to correct the condition.

The court found that the State had constructive notice, if not actual notice, and that reasonable inspection procedures could have readily divulged the dangerous condition. We agree. Perusal of the record reveals that several clearly visible alert signals existed which, if not singularly, collectively heralded the distinct probability of impending danger and disaster on this much traveled highway. To begin with, claimant's expert testified to the two large areas of decay on the tree. Concededly, the upper area might have been obscured from casual observation by foliage and limbs, but the lower affected area was three and one-half feet by two and one-half feet in

dimension and located on the trunk of the tree where it was unobscured from view. The decaying process concerning which the expert testified had been in progress for from 8 to 10 years and had created a hole a foot deep and a foot in diameter. The credible evidence, including a photograph, leads to the inescapable conclusion that a substantial portion of this decayed area was visible to the operator of a northbound vehicle on this highway. In addition, trees of the age and species of this tree located 40–45 feet away on the westerly side of the highway had been removed and found diseased about two years before the accident. Also noted is the fact that at some point in time when the highway was leveled, a bank or rise of land on the westerly side of the tree was removed and the tree's roots cut and left partially exposed. These conditions were readily observable and should have been observed by the many Department of Transportation officials and work crews who so frequently traversed the area, and their failure to observe and to take appropriate action constitutes negligence for which the State must respond.

Any reasonable inspection would have revealed these conditions. The exercise of reason does not dictate the impossible task of climbing and bore-testing all of the trees within the State's vast highway system, as appellant suggests. However, it does require at least occasional casual observation, and reason dictates that those observing see what is plainly there to be seen and that they initiate appropriate corrective action.

The State's contention that this tragic accident occurred because of an act of God is rejected. Neither the weather reports nor the testimony as to the other damage in the area indicate that the storm in progress was unusually severe or that it was other than a normal storm for that time of year.

In reference to the State's assertion that the award was excessive, we note that at the time of his death the decedent was 38 years of age and had a life expectancy of 33.6 years, and that his wife was 37 years of age and that his son was age 10. The record demonstrates that the family relationship was ideal and the deceased a loving and devoted husband and father. Extremely well rated by his employer, decedent was being paid at the rate of $12,000 annually. In urging reduction, the State would have this court impose a precise formula based primarily upon the decedent's salary at the time of his death. It is recognized that there is no magic or precise mathematical formula for computing damages in a case of this

kind and, since an award must be based upon intangible pecuniary losses, it is not surprising that differences of opinion occur. Each case is necessarily different. The trial court enumerated the bases for its award, and we find no indication that it considered other than the proper elements of damage. We conclude that its judgment was sound and based upon the proof properly before the court.

We are aware that each case of this kind and its resolution is controlled by its own peculiar facts. The findings here that the State had a duty which it did not fulfill and that this failure caused decedent's death are consistent with the evidence and in accordance with the applicable law.

The judgment should be affirmed, with costs.

KANE, J. (dissenting). In our view, this record does not support a determination holding the State responsible for the results of this tragic accident. For the most part, the evidence tending to support claimant's contention of notice of a defective condition is born of knowledge of the event. The credible evidence establishes that reasonable care was exercised by the State in its maintenance and inspection program. Liability sounding in negligence should not be imposed when the genesis thereof is hindsight rather than foreseeability.

HERLIHY, P. J., and GREENBLOTT, J., concur with MAIN, J.; KANE and REYNOLDS, JJ., dissent and vote to reverse in an opinion by KANE, J.

Judgment affirmed, with costs.