JAY S. SHINDER, Respondent, v STATE OF NEW YORK, Appellant. (Claim No. 61498-A.)

Third Department, January 7, 1982

APPEARANCES OF COUNSEL

*Robert Abrams*, Attorney-General (*Vernon Stuart, Jeremiah Jochnowitz* and *Shirley Adelson Siegel* of counsel), for appellant.

*Roemer & Featherstonhaugh* (*James D. Featherstonhaugh* of counsel), for respondent.

OPINION OF THE COURT

KANE, J.

Claimant was severely injured at about 10:00 P.M. Sunday evening, May 16, 1976, while operating his 1974 Dodge Colt sedan southerly along the New York State Thruway in the vicinity of New Paltz, New York. He was traveling in the rain at about 50 miles per hour with headlights and windshield wipers operating when suddenly and unexpectedly he collided with a black Brahma bull.

The critical issue to be resolved on this appeal is whether, under the circumstances presented, a hazardous

condition existed, and whether the State, with knowledge thereof, failed to exercise reasonable care to prevent the subsequent injury to claimant. The facts are not in dispute. Accordingly, to determine whether ordinary care was exercised, the test is one of foreseeability (*Le Roux v State of New York*, 307 NY 397).

At 4:00 P.M. on the afternoon of May 16, 1976, a State trooper on patrol in the New Paltz area[*] was informed that "there was a bull or cow or some animal on the highway or in the vicinity of the highway around Milepost 75". The trooper proceeded to that area, found nothing, and left. At about 8:00 P.M. the same trooper was again advised that there was an animal in the area of the Thruway at milepost 75. He immediately proceeded to that position in company with another trooper and, upon arrival, observed a black Brahma bull in the grass median separating the northbound and southbound lanes of the Thruway. It was now dusk and the traffic was very heavy. With the emergency lights operating on both vehicles, the two troopers drove their vehicles along the median in an attempt to keep the bull out of the traffic lanes. The bull suddenly maneuvered between their vehicles, crossed the two lanes of traffic, and disappeared in the wooded area along the west side of the Thruway. Several cars were required to slam on their brakes to avoid a collision with the bull. Both troopers remained at the scene for three to five minutes and then left without making any further effort to locate the bull, one trooper testifying, "I'm not going into the woods after a Brahma bull."

At approximately 10:00 P.M. that night, this same trooper received a report of a car accident at milepost 74.6 of the southbound lane of the Thruway. Upon arrival at the scene, claimant was found lying on the grass off the shoulder of the road. His automobile was in an adjacent ditch with considerable damage to its front end. No other vehicles were involved in the accident. The next day, a dead black Brahma bull was found in the wooded area approximately 100 yards from the scene of the accident.

The Court of Claims found against the State on the issue of liability. In our view, this determination is proper.

---

[*] The New Paltz patrol area is between milepost 58 and milepost 76.

Initially, we note that the determination of liability on the part of the State does not rest upon an inference based upon an inference as urged by the State. The conclusion that claimant's accident was caused by a collision with a black Brahma bull that had been sighted in the area of the accident on two prior occasions that day is not a remote or conjectural inference or based upon speculation. A determination that the same bull was found dead the next day 100 yards from the scene of the accident is one founded upon a series of natural and logical inferences drawn from the facts proven (*Markel v Spencer,* 5 AD2d 400, 403, affd 5 NY2d 958). The evidence, though circumstantial, fully supports claimant's version of the happening of the accident. Moreover, the theory of liability is based upon the violation of a duty imposed upon the State to either warn motorists of the existence of a hazardous condition or remove it from the scene (*Rinaldi v State of New York,* 49 AD2d 361). The rule is a rule of reason. Here, there was actual notice of the presence of a black Brahma bull on the Thruway premises. The trooper knew that the bull returned to the grass on the median once and it would be reasonable to assume that it might return again. The proper procedures to be followed were later outlined in the testimony of Trooper Hopper who assisted in the investigation of the accident the following day. He described a similar situation occurring two or three years before. On that occasion, he contacted a farmer in the area known to harbor Brahma bulls and obtained his assistance in capturing the animal, thus avoiding the obvious possibility of an accident such as the one that occurred this time. It further seems reasonable to assume that the owners of Brahma bulls would be within the knowledge of those in the area two or three years after the incident related by Trooper Hopper.

In our view, the conduct of the State trooper was negligent, and that negligence was the proximate cause of plaintiff's injury.

The judgment should be affirmed, with costs.

CASEY, J. (dissenting). In our opinion, the undisputed facts and circumstances surrounding the happening of this claimant's accident, and the conduct of the New York State

Police related thereto, supply no basis, as a matter of law, for a finding of negligence against the State. Therefore, we dissent and would dismiss the claim.

Conceding that the State is required to use reasonable care in maintaining its highways (*Dodd v State of New York,* 31 Misc 2d 112), it is not an insurer of the safety of travelers under all conditions (*Gaines v Long Is. State Park Comm. of State of N.Y.,* 60 AD2d 724). Accordingly, liability will attach to the State only when its officers have actual or constructive notice of a dangerous or potentially dangerous condition (*Harris v Village of East Hills,* 41 NY2d 446, 450) and then fail to take reasonable measures to correct that condition (*Rinaldi v State of New York,* 49 AD2d 361, 363). We do not dispute that the State Police were informed at about 4:00 P.M. on the day of this accident that a bull was in the vicinity of Thruway milepost 75 (although they did not find it) and again at about 8:00 P.M., when they actually saw the animal grazing in the median dividing the northbound from the southbound lanes of traffic, or that the presence of such an animal then and there constituted a dangerous or potentially dangerous condition. Our disagreement with the holding of the majority concerns the conduct of the officers after they observed the bull and drove it from the median across the southbound lanes of traffic and watched it disappear into a swampy area on the westerly side of the Thruway, which is unfenced at that point. When this occurred, the troopers waited three to five minutes and resumed their ordinary patrol duties. In our view, this was perfectly reasonable in the circumstances. At that time, the troopers had no way of knowing where the bull would return, when it would return, or if it would return to the Thruway. If the troopers had pursued it and found it, they were not equipped or schooled in effecting its capture. In fact, pursuit may have caused a more dangerous condition by frightening the animal back onto the Thruway. From the troopers' point of view, it was not then reasonably foreseeable that if the bull returned it would return to the same milepost where it was sighted. Any point on the entire length of the Thruway provided such a possibility, and it would be unreasonable to require patrols to watch and guard for the bull, and to

slow down and warn motorists for that entire distance. This bull was not a fixed hazardous condition which could be guarded against by the erection of signs, flares, signals or the like. It was a freely roaming animal that was never under the control of anyone.

Nor should the success on a prior occasion of a Trooper Hopper, when confronted with a similar situation involving a bull, in locating its owner and with his assistance recapturing that animal, prescribe the standard of conduct for all similar incidents, which is the apparent view of the majority. That prior operation by Trooper Hopper does little more than establish by hindsight that in different circumstances and with a different animal the particular procedure adopted by him proved successful. However, hindsight should not be a basis for a finding of negligence (*Stanton v State of New York,* 26 NY2d 990, 991). Having chased the bull off of the traveled portion of the Thruway and its adjacent areas and watched it disappear into a swamp, heading away from the Thruway, and perhaps even home, the troopers herein did all that could reasonably be expected of them as a matter of law.

On the question of proximate cause, it cannot be said that the failure of the troopers to attempt to locate the owner in any way proximately contributed to claimant's accident. It does not follow that notification of the owner, even if he were located, would have resulted in the capture of this particular bull in the two-hour period from its sighting to the happening of the accident, especially since it was growing dark. At most, the officers here were guilty of an error of judgment in the performance of their duties for which the State cannot be held liable (*Desch, Inc. v State of New York,* 50 AD2d 253).

Finally, our research has disclosed no case, either in this or any other State, which ever imposed liability on a State for animals at large on a highway when they caused personal injury or damage to the users thereof (see, e.g., Liability for Damage to Motor Vehicle or Injury to Person Riding Therein by Animal at Large in Street or Highway, Ann., 59 ALR2d 1328). This case should not be the first to do so.

The judgment should be reversed and the claim dismissed.

MIKOLL and YESAWICH, JR., JJ., concur with KANE, J.; MAHONEY, P. J., and CASEY, J., dissent and vote to reverse in an opinion by CASEY, J.

Judgment affirmed, with costs.