■ MARY J. SANFORD, as Administratrix of the Estate of PATRICIA A. SANFORD, Deceased, Respondent, v STATE OF NEW YORK, Appellant. (Claim No. 60561.) JEAN Q. WAY, Respondent, v STATE OF NEW YORK, Appellant. (Claim No. 59495.) — Appeals from judgments in favor of claimants, entered February

5, 1982, upon a decision of the Court of Claims (O'Shea, J.). Following years of planning begun in the early nineteen fifties and continuing into the sixties and the enactment of appropriate legislation, section 349-e of article 12-B of the Highway Law, construction of the Amsterdam Arterial Highway was commenced in the mid-sixties by the State. This portion of the system included a one-way northbound thousand-foot span over Chuctanunda Creek connecting Market Street and Church Street and linking the city's most densely populated residential area with the heart of the downtown commercial district. At the time of the construction it appears to have been the policy of the State not to construct sidewalks on facilities of this type where an alternate pedestrian route was in place. However, we learn from the testimony that this facility was planned, designed and constructed by the State with limited or approach sidewalks. On the bridge itself an 18-inch-wide safety curb was constructed and from each end of the bridge there was no curbing but a macadam gravel shoulder, sometimes referred to as a path, down each approach ramp. The limited sidewalks were constructed part way up the ramps approaching the bridge with the result that between the end of the sidewalk and the safety curb on the bridge on the south side there was a stretch of gravel shoulder with no curb for a distance of 215 feet, and a similar stretch on the north side of 186 feet. It is conceded that this span afforded the shortest and quickest route between the afore-mentioned commercial and residential areas and was frequently used by the city's residents. Significantly, though subject to extensive use by pedestrians from the time of its completion and opening in August, 1969 until the time of the within tragedy, no warning signs or barriers were put in place to restrict, prohibit or discourage pedestrian traffic. In addition, surprisingly, despite the previously mentioned State policy not to construct sidewalks in conjunction with projects of this type where, as here, alternate routes were available, there was testimony from some State witnesses that the bridge had been designed for occasional pedestrian use. On September 17, 1974, Jean Quist Way and her friend Patricia Sanford, aged 16 and 14 respectively, left their homes in the Market Hill section of the city intending to go to the post office in the downtown section of Amsterdam. Choosing the most direct route to their destination, they walked southerly up the sidewalk approach to the bridge onto the gravel path, crossed the bridge on the westerly side and started down the southerly gravel path. At this point in time an automobile, operated by one Daley, was heading northerly up the bridge approach when it suddenly swerved and headed directly at the girls. Despite their evasive action both girls were struck by the car; Patricia was killed and Jean suffered severe personal injuries. As a consequence, claims were filed and actions against the State were commenced in which it was alleged that the State was negligent in the design, construction and maintenance of the highway. After trial the court found negligence on the part of the State and an absence thereof on the part of claimants and awarded $30,776 in damages to claimant Way and $50,028.80 in damages to the estate of Patricia Sanford. The court then reduced both awards by 50% basing the reduction on the culpable conduct of the settling tort-feasor, Daley, pursuant to section 15-108 of the General Obligations Law. From these judgments, the State appeals seeking reversal and dismissal of the claims contending that there was no duty on the State to build sidewalks, that the governmental planning doctrine enunciated in *Weiss v Fote* (7 NY2d 579) precludes a finding of liability on the part of the State, and that the grossly negligent operation of his vehicle by the settling tort-feasor was a superseding cause of the accident. We reject the State's argument that since it has no statutory duty to build sidewalks it owed no duty to these claimants. It is settled beyond cavil that the State has the duty to design, construct and

maintain its highways in a reasonably safe condition in view of traffic conditions to be expected as well as a host of other criteria (*Tomassi v Town of Union*, 46 NY2d 91, 97). This obligation is not confined to vehicular traffic alone. The State must provide pedestrians with a reasonably safe place to travel and the failure to correct a defective condition along its highway, after constructive notice, establishes negligence (*Meeker v State of New York*, 17 Misc 2d 288). Continuous use by pedestrians for five years provided the requisite notice. Neither are we able to accept the State's argument that the governmental planning doctrine enunciated in *Weiss v Fote* (7 NY2d 579, *supra*) insulates the State from liability here. That policy provides, and justifiably so, that something more than a mere choice between conflicting opinions is required before the State, by reason of its sovereign status, or one of its subdivisions, may be charged with a failure to discharge its duty to plan highways for the safety of the traveling public (*id.*, at p 588) and that liability for injury arising out of the operation of a duly executed highway safety plan may only be predicated on proof that the plan either was evolved without adequate study or lacked a reasonable basis (*id.*, at p 589). Review of the testimony leads inescapably to the conclusion that there was inadequate study of the plan finally executed and no reasonable basis therefor. According to the State's witnesses, its policy at the time of the construction of this project was not to build sidewalks on sites such as this where there were alternate routes for pedestrian traffic. However, the State constructed not a complete network of sidewalks but instead only the beginning of some which in each instance led pedestrians to gravel and partially macadamized paths adjacent to the highway and separated therefrom not by a curb but by a strip of paint. Other State employees testified that the plan followed was one for limited pedestrian use. It clearly appears that at some point in time the State departed from its established policy and adopted a hybrid plan. In short, the State finished with a scheme for which there was no reasonable basis nor sound planning. Moving to the question as to the State's liability for improper maintenance of the highway, we are no longer concerned with the exercise of expert judgment in the course of government planning. Even though a plan is carefully drawn with adequate study and has a rational basis, the State's duty does not end there. Human shortcomings being what they are, all problems cannot be reasonably anticipated or foreseen. The State, once having planned and constructed the project, was under a continuing duty to review its plan in the light of its actual operation and a failure to monitor and review the project's operation is a breach of that continuing duty (*Weiss v Fote, supra; Eastman v State of New York*, 303 NY 691; see, also, *Murphy v De Revere*, 304 NY 922; *Nuss v State of New York*, 301 NY 768). Had the State fulfilled this obligation, as the testimony reveals, it would have discovered that the pedestrian use of the bridge was far from limited and, instead, was frequent and regular. Upon this discovery, the State could have and should have erected appropriate signs and/or barriers warning the unsuspecting public of the peril to be encountered should they choose to proceed. In not monitoring the project in actual operation and in not taking appropriate action or, in fact, any action after observance of the conditions, the State failed to fulfill and thereby breached its duty. Lastly, we also disagree with the State's contention that the gross negligence of Daley was a superseding cause of the accident breaking any causal connection between the State's negligence and the harm inflicted. In a case involving a similar factual pattern, the Court of Appeals found that "[a]n intervening act may not serve as a superseding cause, and relieve an actor of responsibility, where the risk of the intervening act occurring is the very risk which renders the actor negligent" (*Derdiarian v Felix Contr. Corp.*, 51 NY2d 308, 316). Here

the State failed to curb the highway while inviting pedestrian use of the path and thus failed to protect against just the type of accident which occurred, a pedestrian being struck by a motor vehicle. Even when the intervening actor brings about the result through negligence, proximate cause will be found (Prosser, Torts [4th ed], § 44, p 274). It follows then that the negligence of Daley, because it created precisely the risk against which it was the State's duty to guard, i.e., the danger to pedestrians from automobiles, was not a superseding cause. There being no evidence of any negligence on the part of either claimant and ample evidence of actionable negligence on the part of the State, the judgments should be affirmed. Judgments affirmed, with costs. Sweeney, J. P., Main, Casey, Yesawich, Jr., and Weiss, JJ., concur.