OPINION OF THE COURT
Terry Jane Ruderman, J.
This is a claim for personal injuries sustained by claimant on October 28, 1991, when a tree limb, that extended over Grasslands Road (State Route 100) in Valhalla, fell and struck claimant’s car as he was driving along the State roadway. The base of the tree was located partially on the State right-of-way and partially on the property of Frances and Frank Jones. *724 Claimant alleges that the State had actual and constructive notice that the tree was decaying and posed a danger to motorists traveling on the State roadway and that the State failed to make any reasonable attempt to prevent the risk of foreseeable injury. The State removed the tree in January 1992. The trial of this claim was bifurcated and this decision pertains solely to liability.
Frances and Frank Jones testified that in 1954 they purchased their home at 380 Grasslands Road. The tree was situated at a distance of 50 feet from the front of their house and approximately 23 feet from the edge of the road pavement line. There was a row of shrubs, approximately four feet in height, located between the road and the tree. The Joneses maintained the shrubs, but they did not maintain the tree.[1] A concrete circular patch, located on the trunk of the tree and facing the roadway, was present since the Joneses purchased their home.
Mr. Jones testified that sometime between 1986 and 1991, a large branch fell from the tree onto his driveway. He testified that, in October 1991, the tree was "beautiful looking”[2] and appeared healthy without any indication of rot. However, due to the size of the tree, he was afraid that a limb might break off and fall on the house. Mrs. Jones testified that, in her view, there was "nothing wrong with the tree except that it was too big”. She stated that, prior to the accident, she had made several telephone calls requesting that the State trim the tree; however, she could not remember when she had made the alleged calls. The Joneses testified that in the spring of 1986, there were several State employees trimming trees located near the tree at issue, and that, at Mrs. Jones’ request, the State employees removed several low branches from the tree. The Joneses further testified that in May of 1986, Mrs. Jones sent a thank you letter to the State for the services rendered. No record of the letter was produced.
John Moran, an arborist, who has served as a consultant to municipalities regarding tree evaluation and removal of trees, testified on behalf of claimant. He stated that the tree was a silver maple, which species is known to be fast-growing and brittle with an average life span of 50 to 60 years. Moran examined the photographs taken in January of 1992, on the *725 date when the State removed the tree. The cement patch appeared to bulge out and there was a hole above the patch, which indicated the presence of decay behind the cement. The area where the limb had broken off revealed that the tree’s structure was hollow, indicating that the decay had occurred over a 10-to-l 5-year period or longer. There was a hole in the right leader of the tree which further evidenced decay. Moran stated that, apart from the aforestated qualities of a silver maple, the condition of the cement patch and hole should have been clearly visible to an inspector conducting a reasonable drive-by inspection and should have indicated the potential for danger. Moran stated that, if the drive-by inspection was conducted at 30 miles per hour, then the inspector would "miss a lot”.
Moran admitted that there was no evidence of decay exhibited by mushrooms, fungus or weeping. He also acknowledged that exhibit 10B shows that the tree had leaves and was covered with bark; however, he stated that such an appearance does not always indicate that the tree is alive and healthy. As evidenced by exhibit 10C, a tree could be rotted and hollow on the inside and still bear leaves.
Douglas Mead, the Assistant Resident Engineer for the Department of Transportation (DOT) in Valhalla, also testified on behalf of claimant. He stated that he was not given any training on how to recognize a decaying tree. He explained that he did drive-by inspections during the summer months at a speed of 20 to 25 miles per hour and that, if there were no leaves on a tree, then he classified it as dead. DOT does not maintain any written records of drive-by inspections. However, when a problem tree is observed in the course of a drive-by inspection, then a report is generated and given to the "tree crew” to do a follow-up investigation. A written report would also be generated if DOT received a complaint about a specific tree from an outside source. A search of DOT files failed to produce any evidence of either phone calls or letters from the Joneses regarding the tree or any complaints about the tree from other sources. With the admission of exhibit 4 into evidence (complaint/work orders dated from 1985 through 1991), Mead acknowledged that DOT tree crews had been in the area near the tree on a number of occasions from 1985 to 1991.
Mead admitted that the State is responsible for branches that hang over the State right-of-way. However, he testified that he probably did not inspect the tree in question because, due to its location behind shrubs that were neither planted nor *726 maintained by the State, he would not have been aware that the tree was partially on the State right-of-way. He further stated that, even if he had done a drive-by inspection and had observed the tree as depicted in exhibits 10B and 10F, he would not have considered the tree to be a problem tree because it had leaves and bark. Therefore, he would not have reported it to the tree crews.
James McGovern, the DOT Resident Engineer for southern Westchester and Mead’s supervisor, testified on behalf of defendant. As Resident Engineer for the past 28 years, he has been responsible for the daily maintenance of the State roadways in the region that included 380 Grasslands Road. He testified that it was not plausible that a drive-by inspection could be conducted at 25 miles per hour because it would be difficult and dangerous to travel the roadway at such a slow speed.
He, like Mead, was not given any training on how to recognize decaying trees, other than a direction to look for trees that bear no leaves in the spring and summer and have falling bark. He stated that, if a tree had a hole in it, he would not consider it to be decaying if it was in full bloom. Upon review of exhibits 10E and 10F, McGovern testified that, if he had observed the tree prior to the accident, he would not have reported it to the tree crew as a problem tree because it had leaves on it, it was not bending, and it seemed healthy. He also confirmed Mead’s testimony that there was no record of complaints about this tree.
McGovern testified that because the State did not maintain the shrubs between the tree and the roadway, he considered the State right-of-way to end at the shrub line. He acknowledged, however, that DOT had a copy of the record plans for Grasslands Road and could have ascertained the exact location of the State right-of-way.
Robert Herberger, employed by the New York State Department of Environmental Conservation as the Supervising Forester in charge of Dutchess, Putnam and Westchester Counties, also testified on behalf of defendant. He testified that the tree, a silver maple, was of a species that is soft and brittle. Also, its limbs get weaker as the tree gets bigger and older.
He testified that the concrete patch and the hole in the upper right leader were clearly visible and would give cause to conduct a further inspection of the tree. He explained that cement patching has been frowned upon since the 1970s. The fact that the patch was installed prior to 1954 and that the cal *727 lousing had not been completed within 30 years indicated that the tree was not functioning properly and gave cause to make borings into the tree to determine if there was any advanced rot. He stated that, if a tree crew had been present in the nearby area in 1986, then they should have seen the concrete patch and inquired of the homeowner as to when the patch was done. Assuming the crew’s presence, he maintained that the failure to make such inquiry was neither reasonable nor proper. Upon review of the photographs taken in January of 1992, showing the tree cut into segments, Herberger testified that there appeared to be advanced decay that existed prior to the spring of 1986.
While the concrete patch and the hole in the upper right leader were clearly visible, he explained that, in drive-by inspections, the inspectors only look for dead trees and branches. He opined that, because the tree had leaves on it, anyone doing a drive-by inspection at 25-30 miles per hour would not have determined that the branches were in imminent danger of falling. He admitted that a tree could be rotted to the core, with weak limbs in danger of falling off, and still be generating leaves.
The State has a duty to maintain its roadways in a reasonably safe condition and that duty extends to trees adjacent to the roadway which could reasonably be expected to result in injury and damage to the users of the roadways (see, Harris v Village of E. Hills, 41 NY2d 446; Fowle v State of New York, 187 AD2d 698; Rinaldi v State of New York, 49 AD2d 361). The duty to "properly inspect and correct [the potential danger] by trimming or removal is essential to proper maintenance” of the trees by the State (Edgett v State of New York, 7 AD2d 570, 574). Liability, however, does not attach unless the State had actual or constructive notice of the potentially dangerous condition and then failed to take reasonable measures to correct the condition. "In order to constitute constructive notice, ' "a dangerous condition must have been visible and apparent and must have existed for a sufficient length of time prior to the accident to permit [the] defendant’s employees to discover and remedy it” ’ ” (Fowle v State of New York, supra, at 699 [citation omitted]).
In the instant case, there is evidence of actual notice. While there was no written record of Mrs. Jones’ complaints about the tree and her requests that the State trim the tree, the court finds the testimony of Mrs. Jones and the corroborating testimony of Mr. Jones to be credible. Accordingly, the court *728 finds that in the spring of 1986, there were several State employees trimming trees located near the tree in issue, and that, pursuant to Mrs. Jones’ request, they removed several low branches from the tree. Additionally, exhibit 4 indicates that DOT tree crews were in the area on numerous occasions from 1985 to 1991.
The evidence establishes, and indeed defendant’s own witness Robert Herberger admitted, that the concrete patch and the hole in the upper right leader were clearly visible and indicated that the tree required further inspection. Herberger also testified that, if a tree crew had been in the area in 1986, then they should have seen the concrete patch and made inquiry about it and that the failure to make such inquiry was neither reasonable nor proper. There was an abundance of proof that, at the time of the accident, the tree had been significantly decayed for many years. Notably, Herberger opined that the tree had advanced decay that existed prior to the spring of 1986. Accordingly, the court finds that the State had actual notice of the potential danger that the tree posed and that the State failed to take reasonable measures to guard against the risk of injury and damage to the users of its roadway (see, Rinaldi v State of New York, supra). Thus, the court finds defendant to be 100% liable.
In light of the court’s finding of actual notice, it is unnecessary to resolve the issues of whether the State had constructive notice predicated upon what a reasonable drive-by inspection, conducted by persons adequately trained to recognize a decaying tree, would have revealed, or whether the State’s drive-by inspections, in fact, constituted a reasonable inspection sufficient to satisfy its duty.
All motions made heretofore are denied.

. Claimant brought an action against the Joneses in Supreme Court, Westchester County, alleging failure to maintain the tree; that action was dismissed by a jury after a full trial.

. All quotations are to the trial notes unless otherwise indicated.