OPINION OF THE COURT
John P. Lane, J.
This claim arose on the afternoon of August 5, 1992 when Robert Hamilton was struck in front of his home on defendant’s Route 75 by a pickup truck driven by Angelo Palleschi. The trial was bifurcated and this decision is limited to liability issues.
Claimant’s home was located on the inside of a curve on the east side of Route 75 about .3 of a mile north of Schintzius Road, a rural area in the Town of Eden.[1] His garage was on the west side of the road opposite his driveway. The area speed limit was 55 miles per hour; a warning sign advising a speed of 40 miles per hour was posted south of the curve. There were no pedestrian crossings or traffic signals in the vicinity. The right-of-way of Route 75 was 66 feet wide; it had two 11-foot-wide lanes and a 5-foot-wide paved shoulder on each side. The vegetation obscuring the line of sight on the curve shown in the photographs and videotapes in evidence was within the remain *226 ing 17 feet on the east side of the right-of-way. There was no evidence of any prior similar accidents in the area. Claimant has retrograde amnesia as a result of the accident and has no recollection of how it happened.
John Squelch, a friend and neighbor of claimant, testified that on the day of the accident he had gone to claimant’s home to help him work on one of his cars. When he arrived, he parked his station wagon near the garage. Sometime later he crossed the highway from the east side to put some tool boxes in the garage. Intending to re-cross the road, Squelch was looking to the east and saw claimant walking down his driveway toward the road. Squelch then noticed a vehicle approaching from the south at about 50 to 55 miles per hour and that claimant was starting to cross the road. He yelled,- “Bob, there’s a truck coming.”[2] Claimant took “two giant leaps” toward the center of the road, and then ran back to the east side of the road near the end of his driveway where he was hit by the pickup truck. According to Squelch, claimant’s view of the northbound lane and a northbound motorist’s view of claimant’s driveway would have been blocked by the vegetation growing along the east side of the road.
Angelo Palleschi testified that he was on his way to work when the accident happened. According to him, he had been traveling about 55 miles per hour. As he approached the curve, he took his foot off the gas pedal and his truck slowed to about 45 to 50 miles per hour. When he reached the curve warning sign, he could see a man about 300 to 400 feet ahead of him on the west side of the road near a parked vehicle, but could see only part of the northbound lane opposite him. He could not otherwise see around the curve because trees and bushes along the road blocked his view. As he proceeded into the curve, he was distracted by the man on the west side of the road. Palleschi first noticed claimant when he was about 50 to 75 feet away and near the center of the road. His truck was going 40 to 45 miles per hour then; he hit his brakes and swerved to the right before reaching the school bus stop warning sign.[3] Claimant moved back to the east shoulder of the road where the accident happened. The condition of the trees and bushes had existed for a number of years. Palleschi continued to use Sisson *227 Highway to travel to work, and after the trees and bushes had been removed, the edge of claimant’s driveway could be seen from a distance.
Patrick Puckhaber, then a Town of Eden police lieutenant, arrived at the scene of the accident sometime after it happened. He testified that claimant’s view south was restricted by the vegetation along the highway.[4]
Michael Felschow, a Town of Eden police officer, testified that measurements he made at the scene showed that the skid mark from Palleschi’s truck started 87 feet from the south edge of claimant’s driveway. The length of the entire right tire mark was 186 feet. The truck stopped about 78 feet beyond the north line of the driveway. In his opinion, vegetation reduced the line of sight of a northbound motorist to some degree.
The State is not an insurer of the safety of its highways. (Tomassi v Town of Union, 46 NY2d 91.) It is, however, well-settled law that the State is under a nondelegable duty to design and maintain its highways in a reasonably safe condition and that liability will be imposed for injuries proximately caused by a breach of that duty. (Friedman v State of New York, 67 NY2d 271; Lopes v Rostad, 45 NY2d 617.) The State’s duty to maintain its highways in a reasonably safe condition extends to residents who, from time to time, can be expected to cross rural highways on foot. “The State must provide pedestrians with a reasonably safe place to travel and the failure to correct a defective condition along its highway, after constructive notice, establishes negligence.” (Sanford v State of New York, 94 AD2d 857, 859.)
To satisfy its maintenance duty the State is expected to make reasonable inspections to locate and correct dangerous conditions on and near its highways. (Waddingham v State of New York, 90 AD2d 855.) The duty of reasonable inspection requires “at least occasional casual observation, and reason dictates that those observing see what is plainly there to be seen and that they initiate appropriate corrective action.” (Rinaldi v State of New York, 49 AD2d 361, 364.) Thus, the State has constructive notice of a hazardous condition when it has been visible and apparent and has existed for such a period of time that its employees should have noticed and corrected it. (Tanner W. v County of Onondaga, 225 AD2d 1074; Adam v Town of Oneonta, 217 AD2d 894; Gillooly v County of Onondaga, 168 AD2d 921.)
*228 DOT’s 1988 photo log (exhibits C-Q, 12-15), when viewed in proper sequence, shows that a motorist northbound on Route 75 would be unable to see a pedestrian leaving claimant’s driveway to cross the highway, or a car pulling out of the driveway to go in either direction, due to the trees and brush in the right-of-way until he or she was between the telephone pole and the school bus stop sign shown in exhibit 13. This series of routinely taken photographs was constructive, if not actual, notice of a dangerous condition. (See, Guido v State of New York, 248 AD2d 592.) No evidence that DOT took corrective action before the accident has been presented. Thus, photographs taken about six weeks after the accident (exhibits 6-11, 16, 30) and the first part of a videotape (exhibit 1) made about a month later establish that the obstruction to the line of sight had not been remedied in the intervening four years.
Robert Górecki, a special crews coordinator in DOT’s highway maintenance division, and Robert DeCoursey, a highway maintenance supervisor, testified that tree and mowing crews were regularly assigned to highway maintenance duties on Route 75. However, crews were not instructed to check for impairment of sight distance on curves or to cut brush except in response to complaints. Brian Skok, assistant resident engineer for the South Erie residency, the DOT division responsible for Route 75, testified that he was not aware DOT had any program to look for locations where sight distance was reduced by vegetation growing in highway rights-of-way. According to him, DOT only removed vegetation from rights-of-way where it interfered with sight distance at intersections and from ditches where drainage was impeded. There was no program for removal of vegetation that caused sight distance problems on curves; sumac trees and other growth in the right-of-way (such as is shown in the photographs in evidence) that did not interfere with drainage would not be cut.
The videotapes taken about two months after the accident (exhibit 1) and six months later when the roadside vegetation was devoid of foliage (exhibit 2), as well as a number of the photographs in evidence (exhibits 6, 7, 9-11, 16, 30), illustrate the effect of the obstruction of view on the inside of the curve that both claimant and Palleschi faced on the day of the accident. It is evident from the later videotape that if the inside of the curve had been properly maintained, Palleschi would have had a clear view of the end of the driveway and claimant approaching the road from a safe distance. Moreover, claimant would have seen Palleschi’s truck on the curve and undoubt *229 edly would not have tried to cross the road until it had passed. The lack of adequate sight distance on the inside of the northbound curve was readily observable and should have been recognized by the many highway maintenance supervisors and other DOT officials who routinely patrol and travel State highways. Certainly, Jack Tharnish, a DOT equipment operator who was working along the curve a month before the accident, could not have failed to observe the dangerous condition the growth in the right-of-way presented. Their failure to observe, report and take corrective action constitutes negligence for which the State must respond. (Rinaldi v State of New York, 49 AD2d 361, supra.) Where, as here, evidence of notice is manifest, inadequate sight distance caused by obstructing growth in a highway right-of-way will result in liability of a governmental authority for negligent roadway maintenance. (See, Parada v City of New York, 205 AD2d 427.)
An extract from DOT’s Highway Maintenance Guidelines (exhibit 40) contains several provisions contradicting the State’s claim that its duty to trim roadside growth applies only to sign locations and intersections. Tree trimming is to be conducted for reasons of public safety as well as to improve the health and appearance of trees. (Id., § 3.221.) One of the objectives of trimming is to aid public safety by providing adequate sight distance over the traveled way. (Id., § 3.222.) The trimming standard calls for sight distance on the inside of curves and at intersections to be checked at least twice a year. (Id., § 3.223.) Brush control and selective thinning is concerned with the removal of trees and brush that interfere with sight distance. (Id., § 3.231.) Removal of “weed” trees and other trees to provide adequate sight distance is a stated objective. (Id., § 3.232.) Semi-annual inspection of the roadside is called for so that work can be scheduled for this purpose. (Id., § 3.233.)[5]
I reject the State’s contention that “sight distance” is a term of art having a special meaning that makes the cited Highway Maintenance Guidelines provisions -inapplicable to the facts of this case. If that were the case, an appropriate definition of that term should appear in the Guidelines. No such definition *230 has been brought to my attention. Moreover, the argument that sight distance is a concern only from the view of a motorist, and not from that of a pedestrian, is without merit. (See, Sanford v State of New York, 94 AD2d 857, supra.) It is apparent DOT’s local residency ignored or overlooked the guidelines calling for semi-annual inspection of the inside of curves and trimming and removal of trees and brush that interfered with sight distance. The violation of these standards is further evidence of defendant’s negligence. (See, Cipriano v State of New York, 171 AD2d 169, lv denied 79 NY2d 756; McKenna v State of New York, 91 AD2d 1066.)
Accepting the testimony of Squelch and Palleschi and considering the dimensions of Route 75, I find that just after claimant started to cross the road, Squelch saw the oncoming truck and called out. Claimant, not having the truck in view, leapt toward the center of the road. Then seeing the truck coming toward him, he ran back to the side of the road. At the same time, Palleschi applied his brakes and swerved to the right. Of course, claimant knew that from the end of his driveway he could not see around the curve. He has acknowledged that when he crossed the road before the accident, he had been scared a few times. Nonetheless, the State’s reliance on the principle of assumption of risk as an absolute defense to his claim is misplaced. That argument is undermined by Officer Felschow’s testimony that in the absence of crosswalks or traffic signals in the area, a person who wanted to cross the road “has to go for it.” Moreover, claimant did not see Palleschi’s approaching truck before he started to cross the highway. (Compare, Rocklin v Beigert, 224 AD2d 605.) Consequently, the only defense that might be raised by claimant’s actions relates, to comparative fault rather than a bar to recovery.
Vehicle and Traffic Law § 1152 (a) does not support a finding that claimant’s conduct in attempting to escape from a position of peril was a cause of his injuries.[6] The same can be said for section 1146 of that law and Palleschi’s attempt to avoid claimant.[7] It is not surprising that Palleschi’s attention was momentarily focused on Squelch who was waiting to cross the road. *231 Palleschi’s speed was not unreasonable even if it exceeded the 40-mile-per-hour advisory intended for motorists unfamiliar with the highway. His truck was in good condition and had been inspected a month before the accident. He knew the road, which he used regularly to go to work. In any event, his speed was not a factor contributing to the happening of the accident and he and claimant each acted reasonably once they perceived the sudden and unexpected danger they faced. (See, Rivera v New York City Tr. Auth., 77 NY2d 322, rearg denied 77 NY2d 990; Ferrer v Harris, 55 NY2d 285.)
The investigating officers concluded that confusion on the part of claimant and Palleschi contributed to the happening of the accident. No doubt that is true. However, they were confronted by imminent peril that they could not have reasonably anticipated or have been prepared to deal with. (See, Neidert v Austin S. Edgar, Inc., 204 AD2d 1030.) Thus, even though it appears in retrospect that they might have made better choices in responding to the danger they faced, as they each did what a reasonably prudent person might do in the same emergency, and they did not cause or contribute to that emergency by their own negligence, their conduct was not culpable. (PJI 2:14.)
This accident was a natural and probable consequence of the State’s negligence in maintaining Route 75 and it is fully liable for claimant’s resulting injuries. (See, Schichler v State of New York, 110 AD2d 959, affd 66 NY2d 954.) The State’s motion to dismiss the claim and all other undecided motions are denied.

. In Eden Route 75 is also known as Sisson Highway.

. Unless otherwise indicated, material in quotations is taken from the court’s trial notes.

. According to Department of Transportation (DOT) engineer Brian Skok, the curve warning sign was 465 feet south of claimant’s driveway. The school bus stop warning sign was 100 feet south of the driveway.

. Exhibit S, a photograph Puckhaber took at the scene, shows the limited view south claimant had from his driveway and as he entered the road.

. When exhibit 40 was offered, defendant agreed that it was an accurate extract from the Highway Maintenance Guidelines in effect at the time of the accident, limiting its objection to the application of the extracted provisions to the facts of this case. Accordingly, the objection raised in defendant’s post-trial memorandum that a business record foundation should have been laid was waived. (See, Horton v Smith, 51 NY2d 798; People v Gates, 24 NY2d 666; CPLR 4017.)

. Section 1152 (a) provides that “[e]very pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right of way to all vehicles upon the roadway.”

. Section 1146 calls for every driver of a vehicle to exercise due care to avoid colliding with any pedestrian upon any roadway and to give warning by sounding the horn when necessary.