Djumaeva v State of New York (2026 NY Slip Op 50373(U))

[*1]

Djumaeva v State of New York

2026 NY Slip Op 50373(U) [88 Misc 3d 1238(A)]

Decided on January 13, 2026

Court Of Claims

Calderon, J.

Published by New York State Law Reporting Bureau
pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be
published in the printed Official Reports.

Decided on January 13, 2026
Court of Claims

Dilafruz Djumaeva,
Individually and as Administratrix for 
 the Estate of ZAFAR RUSTAMOV, Claimant,

againstThe State of New York, Defendant.

Claim No. 132661

For Claimant:LEVINE & SLAVIT, PLLCBy: Ira S. Slavit, Esq.For Defendant:LETITIA JAMES, Attorney General of the State of New YorkBy: LaDonna S. Sandford, Assistant Attorney General

Francisco Calderon, J.

Claimant Dilafruz Djumaeva commenced this wrongful death action individually and as
administratrix of the estate of Zafar Rustamov (decedent). A bifurcated, liability only trial of this
claim was conducted virtually on June 3, 2025 and in-person on June 4, 2025 upon stipulation of
the parties. Claimant offered Exhibits 1 through 34, 37 through 39, and 41 through 43 [FN1]
which were received into evidence upon stipulation of the parties. Marked versions of several
exhibits were also received into evidence during the trial as exhibits 1A through 1E, 14A, 33A,
34A through 34D, and 37A through 37E. At the start of trial, the parties stipulated that claimant
has standing to bring this claim. Claimant offered the testimony of accident reconstruction
specialist Michael Cei and arborist Bill Logan. By consent of the parties, defendant offered out of
order the testimony of two members of the New York State Police [*2]Department: Lieutenant Roy Kievit and Trooper Steven Gill. At the
close of claimant's proof, defendant moved for a directed verdict. Claimant opposed the motion
and the Court reserved decision. Defendant offered the testimony of David Chomycz, an Acting
Resident Engineer with the New York State Department of Transportation (DOT). After
defendant rested, it renewed its motion for a directed verdict. At the close of all proof, the Court
permitted the parties to submit posttrial memoranda.
After listening to the testimony of the witnesses and observing their demeanor as they
testified, and upon consideration of that evidence and all of the other evidence received at trial
and the applicable law, the Court finds that claimant has proven liability on the claim for
negligence by a preponderance of the credible evidence.FINDINGS OF FACTOn December 24, 2017,
sometime before 3:00 a.m., decedent was driving a 2015 Toyota Camry on the Taconic State
Parkway [FN2]
in one of the northbound lanes (see Collision Reconstruction Unit Report, Exh 2, at
224).[FN3]
Around mile marker 35.9, decedent struck a large fallen tree that had fallen across the entire
northbound side of the road and into one of the southbound lanes. The tree was partially elevated
off the road by the center guiderail and its branches. It was unclear whether the tree had already
fallen across the road or fell onto decedent's vehicle. After the collision, decedent's vehicle
"traveled off the right shoulder, striking an earth embankment and rocks, causing [the vehicle] to
roll onto its roof and continue to its position of uncontrolled final rest on the broken white lane
line of the northbound lanes" (id.). Decedent was pronounced dead at the scene "from
blunt force trauma to the head" (id. at 226). Decedent's rear seat passenger "was able to
climb out of the vehicle and was subsequently transported to Westchester Medical Center with
non-life threatening injuries" (id. at 224-225). Subsequently, a second vehicle traveling
northbound in the right lane struck the tree and continued under it. Numerous photographs were
taken showing the tree and the vehicles as they existed after the accident (see State
Photos, Exh 1).
Michael Cei, an expert in accident reconstruction, testified that he reviewed the police report,
collision reconstruction report, and photographs taken by the New York State police in
preparation for trial. Cei also reviewed the Toyota Carola's design specifications and the
information collected from the vehicle's electronic recorder data or "black box." Cei determined
that the vehicle's headlights could produce "meaningful light" out to 300 feet away from the
vehicle (Trial Trans, Vol 1, at 21). There was no overhead illumination where the collision took
place that would have provided more light than the headlights. While approaching the tree,
decedent's speed varied between 62 and 59 miles per hour and he did not apply his brakes.
Cei created two animations of decedent's approach to the tree.[FN4]
The first video reconstructed the accident using the speeds recorded by the black box (see
Video Animation, Exh 38). At 61 miles per hour, decedent would have needed 344 feet between
his vehicle and [*3]the tree to "perceive, react, and safely stop"
and would not have been able to "perceive and recognize the tree" until he was 125 feet away
(id.). The second video shows what would have happened had decedent been driving at
the posted 55 miles per hour speed limit (see Video Animation, Exh 39). Under that
scenario, decedent would have needed 295.7 feet between his vehicle and the tree to safely
"perceive, react, and stop" and still would not have been able to "perceive and recognize" the tree
until he was 125 feet away (id.).
Cei testified that the perception distance was less than the headlight distance because dark
objects that are not independently illuminated and do not contain light colors cannot be perceived
until 125 feet away at most. Trees are such objects. In Cei's professional opinion, the accident
was unavoidable because decedent did not have enough time to perceive and react to the tree
before the collision. Cei's opinion would have been the same if decedent was traveling at the
posted speed limit. Cei also believed that, by the time decedent was close enough to the tree to
perceive it, he no longer had time to begin braking. Additionally, because the tree was elevated
off the road, the headlights were less useful in allowing decedent to perceive the tree.
Portions of the depositions of three DOT employees were admitted into evidence and read
into the record. At his deposition, Assistant Resident Engineer David Chomycz stated that he
began his employment with DOT in 1999. At some point during his tenancy with DOT, he took a
two-day training course on "hazardous trees" (Chomycz Depo, Exh 41, at 10). The course taught
him what to look for when determining tree health including "lack of leaves, lack of bark,
exposed roots, cracks or other defects" (id. at 11). Chomycz did not personally inspect
any trees but would look out for trees while driving and notify a supervisor if he saw any defects.
Chomycz stated that DOT's written rules and protocols required them to check for dead or
hazardous trees "at least twice a year" (id. at 53).[FN5]
However, Chomycz "continually check[ed] for defects" in the roadway, including the trees
(id. at 87). Chomycz believed that the tree in question in this case was dead at the time it
fell, because it "appear[ed] to not have bark and it seem[ed] extremely dry" (id. at 100).
Chomycz did not believe that the tree was marked for removal; however, if a tree was observed
in its condition it would have been.
At their depositions, Maintenance Supervisors Edward Ford and Donna Cahill confirmed
much of Chomycz's account. Ford stated that DOT employees would drive along the roads
"[s]everal times a year" to look at the trees and see if they were "leaning towards the road, if they
had decay," or if they appeared dead "during the regular time of the year rather than the winter"
(Ford Depo, Exh 42, at 18). Among other things, Ford would check for whether a tree had bark.
Ford reported to the scene of the accident to remove the tree. He noticed that the tree did not
have bark and stated that, had he observed a tree with no bark in a location where it could fall on
the highway, he would have identified it and "tagged it for removal" (id. at 76). When
shown a picture of the tree from before it fell, Ford thought that had he seen the tree it might
have "warrant[ed] more investigation" because it "appear[ed] . . . in decline" due to the "lack of
leaves" (id. at 80). Cahill was also taught to look for lack of bark or "leaves [that weren't]
quite normal"—such as leaves that were dead or discolored—when inspecting trees
(Cahill Depo, Exh 43, at 9). Cahill stated that inspections of trees happened "throughout the year"
and any [*4]potential hazards observed while driving would be
noted (id. at 19). She and DOT employees conducted windshield inspections, meaning
they observed the trees or other potential hazards while driving. Cahill did not observe the tree
before it was cleared but she did look at what was left of it on the side of the road. Cahill
believed the tree was dead because it was a beige color and did not have bark (see id. at
29-30).
Bill Logan, a certified arborist, reviewed the photographs, police report, depositions of DOT
employees, and DOT handbook in preparation for trial. Logan testified that the tree that fell was
dead, because it had no bark on it. Living trees are "bark-tight," but once they die the bark begins
to loosen and falls off over the course of several years. The tree also broke at its base, which
indicated that it was dead for at least four years before the accident.
Logan compiled several images of the tree from Google Streetview into a video (see
Google Streetview Video, Exh 34). In the Google Streetview photographs taken in September
2014, the tree is barren with only a few red leaves and is noticeable against the canopy of
otherwise green trees. In photographs from October 2017, the tree is even more barren and
contains only a few leaves. In photographs from July 2018, the remaining trunk of the tree is
visible on the side of the road and there is a noticeably empty spot in the tree canopy where it
used to stand.
Logan testified that, in his professional opinion, the tree was dead in September 2014
because it had no living leaves. Additionally, the tree would have been visible to anyone
performing a windshield inspection. Had the tree been seen on a windshield inspection, a
follow-up inspection likely would have revealed that the tree did not have bark and that it should
have been removed. The tree should have been identified for removal prior to the crash and
DOT's failure to identify the tree constituted a departure from a typical standard of care. The
failure to see the tree led to the tree becoming increasingly dangerous, falling, and ultimately
causing the accident and decedent's death.
Upon questioning from the Court, Logan testified that leaves can potentially remain on a tree
for many years after it dies because the tree must expend energy to break the leaves off. Logan
could not tell how long the tree was dead for or how long it would stand for after it died.
Lieutenant Roy Kievit and Trooper Steven Gill both testified that they responded to the scene
on the night of the accident. Kievit, who routinely patrolled the Taconic State Parkway, noted
that the road is narrow, wooded, and does not have any artificial light. Kievit observed both
vehicles after the accident and saw that the tree was elevated rather than laying on the ground.
Gill had driven along the Taconic several times the night of the accident before it occurred. After
he reported to the scene, he began his investigation and observed that decedent had been wearing
a seatbelt at the time of his death.
Chomycz spoke to many of the same points that he did at his deposition. He testified that
DOT looks for hazardous trees through windshield inspections. These inspections can happen
daily or a few times per week. Written records are not kept of these inspections. If a hazardous
tree was detected, a supervisor would be notified so that they could inspect it. Chomycz learned
of this accident a few days after it occurred. He had never noticed the tree before the accident and
was unaware of it ever being labeled as a hazardous tree.
On cross-examination, Chomycz was asked to look at the Google Streetview photographs
contained in Exhibit 33. He agreed that, as it appeared in September 2014, the tree with red
leaves was visible, unobstructed, and would have been observable out of a front windshield. He
also agreed that the tree as it appeared in the photographs from October 2017 would have been
[*5]visible to anyone driving southbound along that section of the
Taconic State Parkway.

CONCLUSIONS OF LAW
The claimant "must prove [their] case . . . by a preponderance of the evidence" (Rinaldi
& Sons v Wells Fargo Alarm Serv., 39 NY2d 191, 194 [1976]). On a claim for
negligence, the claimant "must demonstrate (1) a duty owed by the defendant to the [claimant],
(2) a breach thereof, and (3) injury proximately resulting therefrom" (Pasternack v Laboratory Corp. of Am.
Holdings, 27 NY3d 817, 825 [2016] [internal quotation marks and citation omitted],
rearg denied 28 NY3d 956 [2016]). With respect to negligent maintenance of a roadway,
"[i]t is well settled that the State has a duty to maintain its highways in a reasonably safe
condition for travel" (Rinaldi v State of New York, 49 AD2d 361, 363 [3d Dept 1975];
see Friedman v State of New York, 67 NY2d 271, 283 [1986]; Lopes v Rostad,
45 NY2d 617, 623 [1978]). That duty "extends not only to the road surface and shoulders, but
also applies to conditions adjacent to and above the highway, which could reasonably be
expected to result in injury and damage to the users thereof" including trees that "constitute[]
potential danger to the traveling public" (Rinaldi, 49 AD2d at 363 [italics omitted]; see Schillaci v Town of Islip, 163
AD3d 600, 600-601 [2d Dept 2018]). Although the State has a duty to inspect trees along a
roadway, "no liability attaches unless the State has had actual or constructive notice of the
dangerous or potentially dangerous condition and then fails to take reasonable measures to
correct the condition" (Rinaldi, 49 AD2d at 363 [internal citation omitted]; see Fowle
v State of New York, 187 AD2d 698, 699 [2d Dept 1992]). In order to establish constructive
notice, "a dangerous condition must have been visible and apparent and must have existed for a
sufficient length of time prior to the accident to permit the defendant's employees to discover and
remedy it" (Fowle, 187 AD2d at 699 [internal quotation marks, italics, brackets, and
citations omitted]). The State is not required to do "the impossible task of climbing and
bore-testing all of the trees within the State's vast highway system," but to fulfill its duty
"require[s] at least occasional casual observation, and reason dictates that those observing see
what is plainly there to be seen and that they initiate appropriate corrective action"
(Rinaldi, 49 AD2d at 364).
Similarly, as a landowner the State must maintain its property "in a reasonably safe condition
in view of all the circumstances" (Preston v State of New York, 59 NY2d 997, 998
[1983] [internal quotation marks and citations omitted]) but "no liability attaches . . . unless there
exists actual or constructive knowledge of the defective condition of the tree" (Ivancic v
Olmstead, 66 NY2d 349, 350-351 [1985], cert denied 476 US 1117 [1986]). A
landowner is under "no duty to consistently and constantly check all trees for nonvisible decay;"
"[r]ather, the manifestation of said decay must be readily observable in order to require a
landowner to take reasonable steps to prevent harm" (Ivancic, 66 NY2d at 351; see Babcock v County of Albany, 85
AD3d 1425, 1426 [3d Dept 2011]).
Here, the parties do not dispute that the tree fell, that the accident occurred on State property,
or that the State has a duty to maintain its roadways—including trees which could pose a
danger—in a reasonably safe manner (see Defendant's Post-Trial Memo, at 7).
Therefore, the only question before the Court on the issue of liability is whether defendant had
actual or constructive notice of the tree's condition prior to the accident that it failed to act
upon.
The Court finds that claimant has not demonstrated that defendant had actual notice that the
tree was defective or could pose a danger to the roadway. None of the DOT employees, either in
their depositions or at trial, testified to observing the tree prior to the accident. Nor was [*6]any evidence submitted suggesting that anyone at DOT was aware
of the tree or the potential danger it could pose. Therefore, defendant cannot be liable on the
basis of actual notice.
However, the Court finds that claimant has proven by a preponderance of the evidence that
defendant had constructive notice of the defective condition and defendant failed to take
corrective action to address such condition within a reasonable timeframe. The undisputed
evidence at trial demonstrated that the tree was dead for over three years prior to the accident. In
photographs taken by Google Streetview in September 2014, the tree already is devoid of most of
its leaves. What few leaves it has are bright red while all of the other trees have green leaves.
Three years later, the Google Streetview photographs from October 2017 show that the tree is
almost entirely barren, again while surrounded by otherwise green trees. These photographs were
all taken from the road and the Court agrees with claimant's arborist that the condition of the tree
would have been readily visible from a windshield. The Court also finds persuasive the arborist's
undisputed testimony that a tree with few or no leaves during a time of year when trees typically
have leaves means that that tree is dead. Further, at their depositions Chomcyz and Ford, when
shown photographs of the tree prior to the accident, agreed that if the tree had been observed in
that condition it would have warranted further investigation (see Chomycz Depo, Exh 41,
at 111-112; Ford Depo, Exh 42, at 80). DOT employees also mentioned that lack of leaves was
one of the signs of a dead tree that they were taught to look for. Additionally, at trial Chomycz
testified that, based on the photographs, the tree was unobstructed and would have been visible
through the front windshield of a vehicle in both September 2014 and October 2017.
Had any DOT employee, in the course of the numerous windshield inspections that were
undertaken on a weekly to daily basis, noticed the readily visible tree without leaves and
followed DOT policy to notify a supervisor to perform a closer inspection of the tree (see
Trial Trans Day 2, at 67), such supervisor would have observed that the tree partially or wholly
lacked bark. All of the witnesses who observed the tree at the time of the accident agreed that it
entirely lacked bark. This observation is supported by the photographs of the tree that are in
evidence. The arborist testified that bark falls off of a tree over the course of several years,
meaning that even in September 2014, the tree was likely missing at least some, if not all, of its
bark. Indeed, the branches and trunk of the tree appear to be the same light color in both the
photographs from September 2014 and the photographs from the time of the accident where the
tree clearly does not have bark. The arborist testified that partial or total lack of bark is a further
indication that a tree is dead and therefore is at risk of falling over. The DOT employees also
testified that lack of bark was something that they looked for when determining whether a tree
needed to be removed. Additionally, Ford said at his deposition that, had he observed a tree with
no bark in a place where it could fall onto the highway, he would have "tagged it for removal"
(Ford Depo, Exh 42, at 76). It therefore seems eminently likely that, upon a Supervisor's visual
inspection, the tree would have been deemed dead and tagged for removal.
The evidence and testimony clearly suggest that the tree was dead for several years before the
accident occurred; that the evidence that it was dead was readily available upon a windshield
inspection and follow-up visual inspection; and that the tree's height and location posed a threat
to motorists should it fall. Therefore, defendant had constructive notice of the dangerous
condition of the tree, because it was "visible and apparent and [the condition] existed for a
sufficient length of time prior to the accident to permit the defendant's employees to discover and
remedy it" (Fowle, 187 AD2d at 699 [internal quotation marks, italics, brackets, and
citations omitted]; see Ferrigno v
County of Suffolk, 60 AD3d 726, 728 [2d Dept 2009]; [*7]Guido v State of New York, 248 AD2d 592, 592 [2d Dept
1998]; Rinaldi, 49 AD2d at 363-364; see also Harris v Village of E. Hills, 41
NY2d 446, 448-450 [1977]; compare Ivancic, 66 NY2d at 351; Leach v Town of
Yorktown, 251 AD2d 630, 630-631 [2d Dept 1998]). Having had constructive notice of the
condition, defendant did not "take reasonable measures to correct the condition" (Rinaldi,
49 AD2d at 363). Therefore, the Court finds that defendant breached its duty to maintain its
roadways in a reasonably safe condition and that breach was the proximate cause of decedent's
death. Having established liability, a trial on damages will be scheduled.
As for contributory negligence, "[c]ulpable conduct claimed in diminution of damages, in
accordance with [CPLR 1411], shall be an affirmative defense to be pleaded and proved by the
party asserting the defense" (CPLR 1412). Here, the Court credits the undisputed testimony of
claimant's accident reconstruction expert who testified that, even if decedent had been traveling
at the speed limit, he still would not have had time to perceive and react to the fallen tree prior to
the accident. Defendant has not submitted any proof in support of its affirmative defense that
would suggest decedent could have averted the accident. Therefore, the Court finds that decedent
bears no responsibility for causing the accident and defendant is 100% liable for the damages that
will be determined after the trial on damages.

CONCLUSION
Therefore, upon consideration of the testimony of the trial witnesses, observing their
demeanor and assessing their credibility as well as reviewing all exhibits received at trial and
reviewing the applicable law, this Court hereby finds that claimant has proven liability on her
claim for negligence by a preponderance of the credible evidence. Any and all other evidentiary
rulings or motions upon which the Court may have previously reserved or which were not
previously determined are hereby denied. This constitutes the Decision of this Court. Let
interlocutory Judgment be entered accordingly.
Saratoga Springs, New YorkJanuary 13, 2026FRANCISCO
CALDERONJudge of the Court of Claims

Footnotes

Footnote 1:The parties stipulated that only
certain portions of exhibits 41 through 43 would be admitted into evidence and considered by the
Court as documented in Exhibit 40 and on the record at trial.

Footnote 2:The Taconic State Parkway is a
four-lane divided highway, with two lanes in each direction, and a posted speed limit of 55 miles
per hour.

Footnote 3:All citations to Exhibits 1
through 34 and 37 utilize claimant's pagination which runs consecutively throughout.

Footnote 4:Although Cei was unable to
determine whether the tree was already on the road as Cei approached, he assumed that the tree
was already there for purposes of the animation.

Footnote 5:Chomycz's recollection is
confirmed by the Highway Maintenance Guidelines which provide that "[t]he highways should
be checked at least twice a year to locate and schedule removal of dead and hazardous trees"
(Highway Maintenance Guidelines, Exh 8, at 9).