■ RICHARD D. KIMBER et al., Appellants, v STATE OF NEW YORK, Respondent. [741 NYS2d 612] —Peters, J. Appeal from a judgment of the Court of Claims (Hanifin, J.), entered October 2, 2000, which, inter alia, granted the State's cross motion for summary judgment dismissing the claim.

On October 8, 1993, claimants sustained injuries from a single vehicle motorcycle accident when their motorcycle left the paved 12-foot wide travel lane of State Route 427 in Chemung County, traveled across an 11-foot wide paved shoulder, proceeded onto the adjoining grassy area and ran over a "drop inlet" or drainage sluice located within the public right-of-way about 2.5 feet from the edge of the shoulder and 13.5 feet from the edge of the roadway.[1] They were ejected from the motorcycle and, with both claimants unable to recall any details as to why the motorcycle veered off the road, the cause of the accident remains unknown.[2]

Prior to this incident, there was no history of any motorcycle accidents involving drop inlets along this roadway. It was originally constructed in 1946 at which time the drop inlet was flush with the existing grade. A second construction project on the highway, started in 1964 and completed in 1966, placed a six-inch three-sided U-wall around the perimeter of the drop inlet to redirect water from the highway into the drain. The third construction project, completed in 1983, involved the resurfacing of the two travel lanes and shoulder, but did not contemplate work on the drop inlet.

After filing a timely notice of claim, claimants commenced

---

1. Vehicle and Traffic Law § 118 defines "highway" as "[t]he entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel." Vehicle and Traffic Law § 140 defines "roadway," in relevant part, as "[t]hat portion of a highway improved, designed, marked, or ordinarily used for vehicular travel, exclusive of the shoulder and slope." Vehicle and Traffic Law § 143-a defines the "shoulder" as "[t]hat improved portion of a highway contiguous with the roadway."

2. Police investigation of the accident scene could not assist on the issue of causation.

this action against the State, alleging, inter alia, the State's negligent design, construction and maintenance of the drop inlet. After joinder of issue and discovery, claimants moved for summary judgment on the issue of liability. The State cross-moved for summary judgment seeking a dismissal of the claim. After denying claimants' motion on the issue of liability, the Court of Claims proceeded to the State's cross motion and found that the State owed no duty to maintain the grassy area adjacent to the highway. Upon that basis, summary judgment was awarded. Claimants appeal.

We affirm. The determinative issue was whether the State owed a duty to claimant to either remove or warn of the drop inlet located on residential property. In dismissing the claim, the Court of Claims sought guidance from decisions of the Court of Appeals regarding the duty owed by a municipality to motorists with regard to the construction and maintenance of its highways. Viewing the evidence in the light most favorable to claimants, the court correctly noted that this was a question of the law for the court (*see, Eiseman v State of New York*, 70 NY2d 175, 189). *Tomassi v Town of Union* (46 NY2d 91) clearly articulated this duty: "A municipality * * * is not an insurer of the safety of its roadways. The design, construction and maintenance of public highways is entrusted to the sound discretion of municipal authorities and so long as a highway may be said to be reasonably safe for people who obey the rules of the road, the duty imposed upon the municipality is satisfied * * *" (*id.* at 97 [citations omitted]). The Court of Appeals also recognized that "[e]specially in rural locales, such objects as utility poles, drainage ditches, culverts, trees and shrubbery are often in close proximity to the traveled right of way * * * . But for the careful driver, the placement of these items near the pavement creates no unreasonable danger" (*id.* at 97 [citations omitted]). Hence, by finding that the paved roadway in *Tomassi* was more than adequate for public passage, the Court of Appeals found that no liability may be foisted upon the municipality since "travel beyond those limits [was] neither contemplated nor foreseeable" (*id.*; *cf., Bottalico v State of New York*, 59 NY2d 302). Moreover, where an adequate paved roadway is provided, a municipality is not under a duty to maintain, for vehicular traffic, unimproved land beyond the limits of the paved roadway (*see, Stiuso v City of New York*, 87 NY2d 889, 891).

We find that the Court of Claims correctly determined that the State had satisfied its prima facie burden of establishing its entitlement to judgment as a matter of law (*see, Zuckerman*

*v City of New York*, 49 NY2d 557); the drop inlet was "beyond the traversable shoulder and * * * [the] emergency use of such additional area was * * * [not] foreseeable" (*Muller v State of New York*, 240 AD2d 881, 882). In aptly responding to claimants' contention that it was not the original construction of the roadway but rather the 1966 reconstruction or the 1983 reconstruction which either failed to meet proper engineering standards or to have corrected a known hazard, the court reviewed claimants' proffer of expert testimony and documentary evidence and properly found them to be insufficient to raise an issue of fact concerning the State's breach of its duty. As the record suggests, without dispute, that there was no history of accidents "in the immediate area associated with the * * * [drop inlet] which would place the State on notice of the need for reconstruction or remediation" (*Vizzini v State of New York*, 278 AD2d 562, 563, citing *Van De Bogart v State of New York*, 133 AD2d 974, 976), the grant of summary judgment to the State was proper.

Mercure, J.P., Crew III, Spain and Lahtinen, JJ., concur. Ordered that the judgment is affirmed, without costs.