■ HEATHER SHERMAN, Individually and as Administrator of the Estate of BEVERLY WITHEY, Deceased, Respondent, v COUNTY

---

* When petitioner commenced this modification proceeding, the parties' oldest child was not yet 21 years old.

of Cortland, Appellant. (Action No. 1.) Shirley Withey, as Guardian of Melissa Sherman, an Infant, Respondent, v County of Cortland, Appellant. (Action No. 2.) (And a Third-Party Action.) [795 NYS2d 121]—

Spain, J. Appeal from an order of the Supreme Court (Rumsey, J.), entered April 1, 2004 in Cortland County, which denied defendant's motion for summary judgment dismissing the complaints.

These actions stem from a single-car automobile accident which occurred on Cincinnatus Road in the Town of Cincinnatus, Cortland County on July 1, 1999. The driver, Beverly Withey (hereinafter decedent), was killed in the accident and her daughter, Melissa Sherman, suffered serious injury. Thereafter plaintiff Heather Sherman, on her own behalf as decedent's daughter and as administrator of decedent's estate, commenced a wrongful death action against defendant. Plaintiff Shirley Withey, as guardian of Melissa Sherman, commenced a personal injury action against defendant. In each action, plaintiffs allege that defendant negligently designed, constructed and maintained Cincinnatus Road, thereby causing the accident. Supreme Court denied defendant's motion for summary judgment. On defendant's appeal, we reverse.

It is uncontroverted that the accident occurred when decedent's vehicle, while proceeding northbound on Cincinnatus Road, traveled off the right shoulder of the road into a drainage ditch lying adjacent to the roadway, where it struck a culvert, causing the car to become airborne, rotate 90 degrees on its passenger side and then crash into a utility pole located some 11 feet off the side of the road. The reason the vehicle left the road is unknown; Melissa Sherman has no memory of the event, there were no other witnesses and no defect in the surface of the roadway itself is alleged. Instead, plaintiffs assert that the ditch, culvert and utility pole located in close proximity to the road constituted a dangerous condition created by defendant.

"A municipality has a nondelegable duty of maintaining its roads and highways in a reasonably safe condition," which includes the duty to maintain the condition of paved shoulders alongside the roadway where the municipality has undertaken to provide them (*Stiuso v City of New York*, 87 NY2d 889, 890-891 [1995]). In addition, the state or a municipality may be liable for conditions adjacent to the highway which interfere with a motorist's safe and legal use of the roadway, such as where tree limbs encroach upon a roadway (*see e.g. Rinaldi v State of New York*, 49 AD2d 361, 363 [1975]). "On the other hand, where the paved road surface is 'more than adequate for safe public passage,' travel beyond those limits on unimproved land adjacent to the roadway is generally not contemplated or foreseeable and therefore the municipality is under no duty to maintain it for vehicular traffic" (*Stiuso v City of New York, supra* at 891, quoting *Tomassi v Town of Union*, 46 NY2d 91, 97 [1978]). Furthermore, even if a duty on the part of the municipality were established, "no liability will attach unless the ascribed negligence of the [municipality] . . . is the proximate cause of the accident" (*Duger v Estate of Carey*, 295 AD2d 878, 878-879 [2002] [internal citations and quotation marks omitted]).

Here, it is undisputed that Cincinnatus Road—including the relevant, northbound lane which is over 10 feet in width—was in good condition. This daytime incident took place along a straight and level stretch of the rural road where the speed limit is 55 miles per hour. According to the police report, the weather was overcast and dry and there were no skid marks where the vehicle left the road. Indeed, plaintiffs' expert did not question the adequacy of the traveling lane or identify any defect in the roadway or shoulder but, instead, listed the ditch, culvert and utility pole as contributing to the accident, ultimately concluding that the accident "was attributable to the dangerous and defectively designed, constructed and maintained roadside area adjacent to Cincinnatus Road." "Undoubtedly, certain risks are unavoidable. Especially in rural locales, such objects as utility poles, drainage ditches, culverts, trees and shrubbery are often in close proximity to the traveled right of way. But for the careful driver, the placement of these items near the pavement creates no unreasonable danger" (*Tomassi v Town of Union, supra* at 97 [citation omitted]; *accord Kirtoglou v Fogarty*, 235 AD2d 1019, 1020-1021 [1997]). Significantly, it cannot be said that the ditch, culvert or utility pole caused decedent's vehicle to leave the road and defendant cannot be held liable for the vehicle's unforeseeable travel beyond the roadway. Accordingly, plaintiffs' reliance on the existence and

condition of the ditch, culvert and utility pole is misplaced (*see Tomassi v Town of Union, supra* at 97; *Duger v Estate of Carey, supra* at 879; *Kimber v State of New York*, 294 AD2d 692, 694-695 [2002], *lv denied* 99 NY2d 501 [2002]).

Although plaintiffs suggest that defendant may have breached its duty to follow prevailing state and federal standards and guidelines with respect to the width of the shoulder in the vicinity of where decedent's vehicle left the roadway (*see Preston v State of New York*, 6 AD3d 835, 836 [2004], *lv denied* 3 NY3d 601 [2004]), plaintiffs failed to proffer any link between that alleged inadequacy and the cause of the accident.* As indicated, the pavement was dry and in good condition and there was no indication that decedent attempted to stop the vehicle before it left the road. "[I]n the absence of any competent direct or circumstantial evidence establishing that [defendant's] negligence 'was a substantial cause of the events which produced the injury,' plaintiff[s] failed to make a prima facie showing of proximate cause" (*Plante v Hinton*, 271 AD2d 781, 782 [2000], quoting *Derdiarian v Felix Contr. Corp.*, 51 NY2d 308, 315 [1980] [citations omitted]). Under the facts presented here, only speculation could link the width of the road to the proximate cause of the accident and "[m]ere speculation . . . will not suffice" (*Plante v Hinton, supra* at 782).

In light of our holding, we need not address defendant's remaining contentions.

Mercure, J.P., Carpinello and Kane, JJ., concur.

Lahtinen, J. (dissenting). I respectfully dissent. A municipality is required to construct and maintain its highways in a reasonably safe condition for travelers (*see Friedman v State of New York*, 67 NY2d 271, 283 [1986]; *Gutelle v City of New York*, 55 NY2d 794, 795 [1981]). When constructing or reconstructing a highway, the municipality is afforded qualified immunity for "judgmental error in planning highway design" (*Gutelle v City of New York, supra* at 795; *see Weiss v Fote*, 7 NY2d 579 [1960]). This provides broad protection to a municipality when undertaking such a project. Indeed, finding an expert who disagrees with the municipality's reasoned decision in such a project is not enough since a "choice between conflicting experts is insufficient to establish municipal liability" (*Evans v Stranger*, 307

---

* Conflicting evidence was presented concerning the actual width of the shoulder in the vicinity of the accident. Despite a suggestion by plaintiffs' expert that a wide shoulder may be helpful to a driver who inadvertently leaves the roadway "to safely return to the roadway," he never opined that the roadway failed to meet state and/or federal guidelines at the site of the accident or that the absence of a wide shoulder caused the accident.

AD2d 439, 441 [2003]; *see Affleck v Buckley*, 96 NY2d 553, 557 [2001]). However, liability may be implicated when the project plan is not supported by an adequate study or lacks a reasonable basis (*see Alexander v Eldred*, 63 NY2d 460, 466 [1984]; *Gutelle v City of New York, supra* at 795). In the rare situation where immunity does not protect a municipality's reconstruction project and it is shown that a condition created by the municipality in close proximity to a highway is a substantial factor in a plaintiff's injuries, the fact that there may not have been a defect in the traveled portion of the highway does not necessarily foreclose liability (*see Gutelle v City of New York, supra* at 796; *Lattanzi v State of New York*, 53 NY2d 1045 [1981], *affg* 74 AD2d 378, 379-380 [1980]; *Merchant v Town of Halfmoon*, 194 AD2d 1031, 1032-1033 [1993]; *see generally Friedman v State of New York, supra*; *Winney v County of Saratoga*, 8 AD3d 944, 944-945 [2004]).

Here, plaintiffs alleged, among other things, that in 1994 defendant reconstructed Cincinnatus Road in the area where the accident later occurred, that it failed to conduct a reasoned plan or study for the road prior to such reconstruction, that during reconstruction it failed to comply with guidelines in effect at that time, and that it created a dangerous condition which resulted in the catastrophic nature of the injuries suffered in the accident. While defendant contests each of these allegations, I believe that plaintiffs submitted sufficient proof to avoid summary disposition.

Plaintiffs' evidence included a detailed 15-page affidavit from James Napoleon, a licensed engineer. Although Napoleon acknowledged that defendant's employees characterized the 1994 work as "rehabilitation," he opined that the nature of the work as described by such employees constituted a reconstruction and, moreover, he cited to evidence in the record and to relevant guidelines that supported his opinion. Furthermore, he pointed to evidence indicating that the work he characterized as reconstruction included the ditches. It is unclear whether defendant undertook an adequate study of the purported reconstruction. Again, Napoleon sets forth guidelines that describe a design report that should accompany a reconstruction project. Defendant, which did not even believe a reconstruction was being conducted, did not prepare such a report and there is little in this record reflecting any meaningful study by defendant. Napoleon recites several purported failures to comply with state guidelines in effect in 1994 for reconstruction of this type of highway. Evidence submitted by plaintiffs indicated that the shoulder had been constructed in such a fashion that it varied

in width from one foot to no shoulder, with an immediate drop into the ditch (*see Merchant v Town of Halfmoon, supra* at 1032-1033). Napoleon related that the ditch dropped at least 2¹/₂ feet in a "V" shape with the fore-slope and back-slope having gradients of one on two. According to Napoleon, this violated various relevant guidelines and he further opined that the ditch was "constructed in an inherently unsafe manner." The police accident report, which found no evidence of excessive speed, observed that once in the ditch "it would have been nearly impossible for the operator to steer out of it due to the depth and steep banks present" (*cf. Stiuso v City of New York*, 87 NY2d 889, 890 [1995] [describing a similar situation as tires stuck "in the manner of a bowling ball in the gutter lane"]). The vehicle continued in the ditch until it struck the end of a culvert, causing it to become airborne and strike a utility pole.

Undoubtedly, plaintiffs face a formidable task in proving each step that might lead to liability for negligent design and construction. I agree with Supreme Court, however, that plaintiffs submitted sufficient evidence to create triable issues. As to defendant's contention that it is protected by its written notice statute, such statute does not apply when the municipality creates the allegedly dangerous condition (*see Akley v Clemons*, 237 AD2d 780, 781-782 [1997]; *Merchant v Town of Halfmoon, supra* at 1032). I would affirm Supreme Court's order.

Ordered that the order is reversed, on the law, without costs, motion granted, summary judgment awarded to defendant and complaints dismissed.