■ Colleen Casey, Respondent, v State of New York, Appellant. [51 NYS3d 203]—

Garry, J.P. Appeals (1) from a decision of the Court of Claims (Hard, J.), entered June 18, 2015, in favor of claimant, and (2) from the judgment entered thereon.

In April 2009, claimant was employed by the Office of Court Administration as a senior court officer and was assigned to the Troy Police Court in the City of Troy, Rensselaer County. Claimant owned four handguns under a valid pistol permit, including her service weapon, which she transported back and forth daily from her home, and three private weapons that she kept at her home. Claimant's employment as a court officer was governed by the Court Officers Rules and Procedures Manual, which provides, as pertinent here, that when the Deputy Chief Administrative Judge with authority over the court to which a court officer is assigned deems it proper to do so, he or she may prohibit the officer "from carrying or possessing a firearm or any other weapon," and that, upon such a prohibition, the officer "shall turn in to [his or her] supervisor all firearms owned or possessed by the court officer" (Court Officers Rules and Procedures Manual § 6.90 [3], [4]).

While claimant was so employed, the Deputy Chief Administrative Judge for Courts Outside New York City issued a directive that immediately suspended her firearm privileges. It was the obligation of an officer who then held the rank of major (hereinafter the Major), with responsibility for all security operations in the Third Judicial District, to carry out the suspension. Accompanied by several other officers, the Major traveled to the courthouse to meet individually with claimant and relieve her of her service weapon. After claimant turned over her service weapon, the Major and three other officers escorted her out of the courthouse to their vehicle, transported claimant to her home and took possession of her personal firearms.[1] Claimant thereafter filed a verified claim seeking damages for false imprisonment and other claims and alleging, as pertinent here, that the Major and the other officers acted without authority and without claimant's consent in confining her, controlling her movements and compelling her to travel with them to her home. The Court of Claims conducted a bifurcated trial on the issue of liability, found that defendant was liable for false imprisonment, and dismissed the other

---

1. No disciplinary action was thereafter taken against claimant; she remains employed as a court officer, and her pistol permit was never suspended or revoked.

claims. Following the second part of the bifurcated trial, the court issued a judgment awarding damages to claimant. Defendant appeals.[2]

To establish her claim of false imprisonment, claimant was obliged to show that defendant intended to confine her, that she was conscious of her confinement, that she did not consent to it and that the confinement was not privileged (*see Martinez v City of Schenectady*, 97 NY2d 78, 85 [2001]; *Broughton v State of New York*, 37 NY2d 451, 456-457 [1975]; *Miller v State of New York*, 124 AD3d 997, 998 [2015]). Upon appeal, defendant does not challenge the findings of the Court of Claims that claimant was intentionally confined, was aware of her confinement and did not consent to it. Defendant's sole contention is that the court should have found that the detention was privileged on the ground that the Major's authority to command claimant through lawful orders carried with it a privilege to keep claimant under the Major's supervision and to control her movements when claimant did not immediately comply with the lawful order to surrender her personal firearms. Defendant bore the burden to establish the affirmative defense of privilege (*see Cass v State of New York*, 134 AD3d 1207, 1209 [2015], *lv dismissed* 27 NY3d 972 [2016]; *Moulton v State of New York*, 114 AD3d 115, 120 [2013]), and we agree with the Court of Claims that defendant failed to meet this burden.

Where, as here, there is no claim that a confinement took place "under a valid process issued by a court having jurisdiction" (*Nazario v State of New York*, 75 AD3d 715, 718 [2010] [internal quotation marks and citations omitted], *lv denied* 15 NY3d 712 [2010]), confinement that would otherwise be unlawful will be found to be privileged only if the defendant establishes that it was "reasonable under the circumstances and in time and manner" (*Barrett v Watkins*, 82 AD3d 1569, 1572 [2011] [internal quotation marks and citation omitted]; *see Zegarelli-Pecheone v New Hartford Cent. Sch. Dist.*, 132 AD3d 1258, 1259 [2015]). The reasonableness of a defendant's

---

2. Defendant's appeal was taken from both the judgment and from a decision establishing the amount of the damage award. As a decision is not an appealable paper and the appeal from the judgment includes review of the underlying decision, the appeal from the decision must be dismissed (*see* CPLR 5512 [a]; *Haber v Gutmann*, 64 AD3d 1106, 1107 n [2009], *lv denied* 13 NY3d 711 [2009]). Further, although defendant appealed from the entire judgment, its brief upon this appeal challenges only its liability for false imprisonment and raises no claims related to the damage award; accordingly, we deem any such arguments to be abandoned (*see Rauch v Ciardullo*, 127 AD3d 1293, 1293 n [2015]; *Jackson v Heitman Funds/191 Colonie LLC*, 111 AD3d 1208, 1212 n 2 [2013]).

actions in this context is determined based upon all of the circumstances, including such considerations as the need, if any, to protect persons and property, "the manner and place of the occurrence, and the feasibility and practicality of other alternative courses of action" (*Sindle v New York City Tr. Auth.*, 33 NY2d 293, 297 [1973]).

Here, defendant contends that the directive suspending claimant's firearm privileges provided that it was "effective immediately," and that, in transporting claimant to her home to obtain her firearms, the Major acted within her duty to promptly effectuate the directive and "ensure [claimant's] compliance" (Court Officers Rules and Procedures Manual § 13.10 [4]). Defendant further argues that claimant was obliged by the rules that governed her employment to "promptly obey all lawful orders" from a supervisor and to turn over her firearms "when so ordered by a [m]ajor" (Court Officers Rules and Procedures Manual §§ 1.30 [A]; 6.90 [4]), but that she did not do so. Instead, defendant contends upon appeal that claimant resisted, became intransigent and upset, and repeatedly refused to obey directives, thus obliging the Major and the other officers to restrict and control her movements in order to protect the public safety and promptly effectuate the suspension directive. Assuming without deciding that proof that claimant was noncompliant and distraught might have sufficed to establish a privilege to confine her and control her movements, the evidence that defendant submitted at trial provided no such proof and fails to support its assertions upon appeal.

At trial, defendant presented the testimony of the Major and two of the officers who assisted her in relieving claimant of her firearms. None of these witnesses gave any testimony whatsoever describing claimant as intransigent, noncompliant or upset, nor did they assert that her conduct or demeanor had any effect on their decisions as to how to effectuate the suspension of her firearm privileges. The testimony of the officers who assisted the Major was brief and wholly devoid of assertions that claimant was distressed or uncooperative. The testimony of the Major was the only evidence offered by defendant that provided a detailed account of events.[3] Nothing in the Major's testimony described claimant as distraught or noncompliant. On the contrary, in the Major's account, claimant affirmatively proposed the trip to her home to pick up her weapons and freely consented to be transported there in the officers' vehicle. Ac-

---

**3.** One of the assisting officers was unable to recall many of the day's events, and the testimony of the other was characterized by the Court of Claims as "perfunctory and redundant."

cording to the Major, the transfer of claimant's service weapon was accomplished "[q]uickly and efficiently. [Within] minutes." As to her personal weapons, claimant advised that they were locked inside her home, and that she did not have a house key with her at the courthouse. Claimant refused to allow the court officers to retrieve the key from claimant's relative at his place of employment, explaining that she did not want uniformed officers arriving at her relative's workplace. Notably, this was the sole instance during the entire encounter, as described by defendant's witnesses, when claimant failed to fully cooperate with directions. Rather than pressing claimant on this point, the Major then allegedly offered to wait with claimant at the courthouse until she was picked up from work that afternoon. However, claimant allegedly offered to go immediately and to seek access to her house in another manner.

According to the Major, claimant then agreed with the suggestion that the Major and the other officers would transport claimant to her house to see if she could gain entrance; if not, they would return with her to the courthouse to wait for the relative. Claimant then willingly exited the courthouse, accompanied by the other officers. As they walked toward their vehicle, another fellow officer offered claimant a ride, which the Major directed her not to accept. Claimant allegedly agreed by saying "okay," and got into the officers' vehicle. Contrary to claimant's account of events, the Major testified that the officers did not push claimant or put their hands on her to cause her to move in any particular direction, nor did anyone force her to get into the vehicle.

After arriving at claimant's home, claimant was able to gain entrance. In direct contrast to defendant's current assertion— that is, that constant supervision of claimant until her firearms were secured was necessary for safety reasons because of her noncompliant, distraught attitude—the Major testified that she told claimant that she trusted her and permitted her to enter the house where her firearms were stored, alone and unsupervised, while the other officers waited outside. After entering the house, claimant allegedly opened the door to invite the Major in, secured her dogs, and turned over her firearms. The Major then provided claimant with a ride back to the courthouse to return to work; claimant allegedly hugged the Major at the end of the encounter and thanked her for her kindness.

There is nothing in this testimony that supports defendant's current claim that claimant was so noncompliant that it was reasonably necessary to confine her or restrict her movements

to ensure her compliance, or so distraught that close supervision was required to ensure her safety and that of others until the firearms were secured. Of course, a different account of the events was offered by claimant and her witness, and ultimately accepted by the Court of Claims. Defendant now relies upon claimant's proof to support the claim of privilege, arguing that the testimony that claimant was upset and uncooperative establishes that it was reasonable under the circumstances for the Major and the other officers to confine her and restrict her movements. However, as previously noted, it was defendant's burden, not claimant's, to prove the claim of privilege (*see Cass v State of New York*, 134 AD3d at 1209). Having made no claim at trial that the officers' actions were based in any way upon claimant's alleged insubordination or required by any threat to public safety, and having instead presented contradictory evidence to the effect that claimant consented to almost everything she was directed to do, defendant cannot now meet its burden by relying on the same testimony that it sought to discredit at trial.

As for defendant's claim that the Major was privileged to confine claimant and restrict her movements by the Major's authority under the governing rules and procedures to ensure claimant's compliance with lawful orders, we note that the rules that require court officers to comply with their supervisors' lawful orders and to turn over their firearms when directed to do so are solely directed at the subordinate officer's obligations, and do not directly address the extent of a supervisor's authority to compel compliance (*see* Court Officers Rules and Procedures Manual §§ 1.30 [A]; 6.90 [3], [4]). Nothing in any of the provisions relied upon by defendant expressly authorizes a supervisor to use confinement or force to compel a subordinate to comply with an order. Moreover, the rules that require an officer to comply promptly with lawful orders do not unequivocally forbid all resistance to every order; they further provide that the officer "shall not obey any order which is inconsistent with the law," must request clarification or confer with a supervisor when in doubt as to whether an order is lawful, and must obey an order that he or she believes to be unlawful only if the supervisor fails to modify the order after being respectfully informed of the subordinate's belief that it is unlawful (Court Officers Rules and Procedures Manual § 1.30 [B], [C]). Accordingly, we agree with the Court of Claims that defendant did not meet its burden to demonstrate that the conduct of the officers in confining claimant and restricting her movements was "reasonable under the circumstances and in time and manner," and therefore failed to prove that the offi-

cers' conduct was privileged (*Sindle v New York City Tr. Auth.*, 33 NY2d at 297; *accord Barrett v Watkins*, 82 AD3d at 1572; *see Miller v State of New York*, 124 AD3d at 998-999; *Moulton v State of New York*, 114 AD3d at 122-123).

Egan Jr., Devine, Clark and Aarons, JJ., concur. Ordered that the appeal from the decision is dismissed. Ordered that the judgment is affirmed, with costs.