Gray v State of New York (2018 NY Slip Op 01520)





Gray v State of New York


2018 NY Slip Op 01520


Decided on March 8, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: March 8, 2018

524800

[*1]JAMES GRAY et al., Appellants,
v
STATE OF NEW YORK, Respondent.

Calendar Date: January 11, 2018

Before: Garry, P.J., Egan Jr., Lynch, Devine and Clark, JJ.


Bottar Leone, PLLC, Syracuse (Adam P. Mastroleo of counsel), for appellants.
Eric T. Schneiderman, Attorney General, Albany (Jonathan D. Hitsous of counsel), for respondent.


Egan Jr., J.

MEMORANDUM AND ORDER
Appeals (1) from a decision of the Court of Claims (Schaewe, J.), entered July 7, 2016, in favor of defendant, and (2) from a judgment entered thereon.
In November 2006, claimants were traveling eastbound on Interstate Highway 88 in the Town of Fenton, Broome County during a rain storm when their vehicle became stuck after they attempted to drive over a fallen tree and other debris that was obstructing the roadway as the result of a mudslide. After waiting in their stranded vehicle for several minutes, claimants accepted the invitation of another motorist who offered them a seat in her vehicle, which was stopped in traffic behind them. Shortly thereafter, another mudslide cascaded down the adjacent slope and across the highway, striking the vehicle in which claimants were
waiting, pushing it up and over the highway's concrete median, seriously injuring claimants.
In February 2009, claimants commenced this action seeking to recover damages for, among other things, personal injuries, alleging, among other things, that defendant negligently designed and maintained the slope adjacent to the highway and, having actual and/or constructive notice that the subject slope created a hazardous or dangerous condition, failed to take reasonably appropriate remedial measures to correct same. Following joinder of issue, the parties each moved for summary judgment, which motions the Court of Claims denied. In May 2016, the Court of Claims conducted a two-day bifurcated trial on the issue of liability. Following the trial, the Court of Claims dismissed the claim, finding that claimants had failed to present evidence establishing that defendant had actual or constructive notice of the subject dangerous condition — [*2]i.e., a mudslide or soil veneer failure. Claimants now appeal.[FN1]
Claimants contend that, in dismissing the claim, the Court of Claims improperly elevated their burden of proof by requiring them to establish that the subject slope had previously experienced similar mudslides, as opposed to providing evidence that the slope had experienced other types of slope failures more generally. We disagree. "It is well established that defendant owes the public a nondelegable duty to keep its roadways in a reasonably safe condition" (Rockenstire v State of New York, 135 AD3d 1131, 1132 [2016] [brackets and citations omitted]; see Stiuso v City of New York, 87 NY2d 889, 891 [1986]; Friedman v State of New York, 67 NY2d 271, 283 [1986]). This duty extends to "conditions adjacent to the highway which interfere with a motorist's safe and legal use of the roadway" (Sherman v County of Cortland, 18 AD3d 908, 910 [2005], lv denied 5 NY3d 713 [2005]; see Stiuso v City of New York, 87 NY2d at 891; cf. Rinaldi v State of New York, 49 AD2d 361, 363 [1975]). Defendant, therefore, "may be found liable where it has actual or constructive notice of a hazardous [or dangerous] condition and fails to take reasonable measures to remedy the danger" (Rockenstire v State of New York, 135 AD3d at 1132; see Friedman v State of New York, 67 NY2d at 283-284).
Claimants' expert, Magued Iskander, a professor of geotechnical engineering, testified that the Department of Transportation (hereinafter DOT) had issued a report in 1988 and two reports in 1997 that indicated that the subject slope had previously experienced rock falls [FN2]. As the Court of Claims recognized in its decision, there is no dispute, therefore, that defendant was on notice that a dangerous condition existed at the subject slope with respect to the potential for rock falls. Iskander testified, however, that the November 2006 slope failure that occurred was a soil veneer failure [FN3]. Although Iskander did not disagree that a mudslide constituted one specific type of soil veneer failure, insofar as "mudslide" was a nontechnical term, he was unwilling to characterize this slope failure as such. Rather, Iskander opined that, based on the characteristics of the subject slope (i.e., a layer of weathered rock covered by a layer of soil), any soil veneer [*3]failure at this site would necessarily consist of a continuum of falling rocks, stones and earth. Iskander opined, therefore, that the prior rock fall incidents at this slope had been mischaracterized and were actually caused by the same surface/soil instability that had caused the November 2006 soil veneer failure.
In that regard, defendant presented the testimony of two expert witnesses, Matthew Balmer, an engineering geologist with DOT, and Barbara Marks, a geotechnical engineer with DOT, who testified that the November 2006 incident was caused by a mudslide and not a rock fall. Balmer and Marks credibly testified that a rock fall and a mudslide were two distinct geologic events caused by separate and distinct triggering mechanisms — a mudslide being caused by soil becoming oversaturated and ultimately separating from the underlying slope and a rock fall occurring when a piece or section of rock detaches from a rock face. Marks further testified that, insofar as rock falls and mudslides are two wholly unrelated events, the mere fact that a prior rock fall incident had occurred on a particular slope did not increase the likelihood for a future mudslide in that same location.
The evidence also established that the area in which the subject slope was located experienced unusually heavy rains on the day in question that caused widespread flooding in the surrounding area. Marks testified that, as a result of heavy rain, the soil on the subject slope reached its saturation point, triggering the mudslide. Based on the testimony presented, and giving appropriate deference to the credibility determinations of the Court of Claims — which clearly credited the testimony of defendant's experts — we find no basis to disturb its determination that the November 2006 slope failure was the result of a mudslide (see Schroeder v State of New York, 145 AD3d 1204, 1205 [2016], lv denied 29 NY3d 914 [2017]; Martin v State of New York, 305 AD2d 784, 784-786 [2003], lv denied 100 NY2d 512 [2003]). Moreover, based on this determination, the Court of Claims did not impermissibly elevate the burden of proof by requiring claimants to establish that defendant had actual or constructive notice that the subject slope had experienced or was otherwise vulnerable to mudslides insofar as defendant's duty to maintain such a slope is only triggered "when a prior accident or other event would give notice of a specific dangerous condition" (Hay v State of New York, 60 AD3d 1190, 1192 [2009] [emphasis added]; see Preston v State of New York, 6 AD3d 835, 836 [2004], lv denied 3 NY3d 601 [2004]; compare Shaknis v State of New York, 251 App Div 767, 767 [1937], affd 277 NY 558 [1938]).
We find similarly unpersuasive claimants' contention that they submitted evidence sufficient to establish that defendant had actual knowledge of prior mudslides and/or constructive knowledge that the slope was otherwise vulnerable to same. In reviewing a nonjury verdict by the Court of Claims, this Court has "broad authority to independently review the probative weight of the evidence" (Schroeder v State of New York, 145 AD3d at 1205 [internal quotation marks, brackets and citations omitted]). Marks testified that, prior to November 2006, the subject slope had no prior history of mudslides. Although Marks acknowledged that the subject slope did, generally speaking, have certain risk factors for mudslides based on its severe 70-degree average slope angle and the fact that a railroad track was located directly above the slope that caused certain vibrations from passing trains, she nevertheless testified that preemptive measures such as soil nailing, soil anchoring, installing wire mesh or building a crib wall were not appropriate for the subject slope and would not have reduced the risk of a mudslide. Marks also acknowledged that, prior to the subject incident, DOT had never inspected the subject slope for soil stability; however, she explained that the subject slope was only one of thousands of such soil covered slopes in her geographic region and she had never previously been alerted to any issues with regard to soil instability on this slope that would have triggered the need for an [*4]inspection.[FN4]
Further, to the extent that claimants' expert opined that defendant should have regularly inspected the subject slope in light of the recommendation in the 1988 DOT report recommending annual inspections due to previous reports of rock falls, Balmer testified that, even if such inspections had occurred, a rock fall inspection would not have provided any information relevant to whether the subject slope was at risk of a potential mudslide. On the record before us, therefore, we agree with the Court of Claims that claimants failed to establish that defendant had actual notice of a prior mudslide or otherwise had prior constructive notice that the subject slope created an unreasonably dangerous condition based on the potential for a mudslide and, as such, no liability can attach (cf. Hay v State of New York, 60 AD3d at 1192-1193; see also Chalk v State of New York, 147 AD2d 810, 812 [1989]; Rittenhouse v State of New York, 134 AD2d 774, 776 [1987]). Accordingly, we find no error with the Court of Claims' dismissal of the claim. To the extent not specifically addressed, claimant's remaining contentions have been reviewed and found to be without merit.
Garry, P.J., Lynch, Devine and Clark, JJ., concur.
ORDERED that the appeal from the decision is dismissed, without costs.
ORDERED that the judgment is affirmed, without costs.



Footnotes

Footnote 1: Claimants' appeal was taken from both the decision of the Court of Claims dismissing the claim and the judgment entered thereon. Insofar as a decision is not an appealable paper, the appeal from the decision must be dismissed (see CPLR 5512 [a]; Casey v State of New York, 148 AD3d 1370, 1372 n 2 [2017]).

Footnote 2: Specifically, Iskander reviewed a February 1988 report that indicated that the subject slope had previously experienced "some" rock falls. Iskander also reviewed a February 1997 DOT report that indicated that 30 to 40 cubic meters of "waste basket" sized rock had fallen from the subject slope onto the highway, causing traffic accidents and vehicle damage. Iskander also reviewed an April 1997 DOT report indicating that another rock fall incident had occurred at the subject slope, which caused a tree and approximately 12 cubic yards of "waste basket" sized rock to enter the highway, striking a passing vehicle.

Footnote 3: Iskander testified that there were three distinct types of slope failures: (1)"deep-seated circular failure[s]," that cause the entire slope to fail; (2) soil veneer failures; and (3) rock falls.

Footnote 4: Balmer testified, meanwhile, that the slope's relevant risk rating indicated that it was at less of a risk of slope failure than 360 other slopes in the state.